MORGAN MANUFACTURING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101444.   Promulgated June 10, 1941.

---

[2] H. R. 708, 72d Cong., 1st sess., p. 13, referring to Revenue Act of 1932, section 23 (r).
[3] *Ibid.*

*Junius G. Adams, Esq.*, for petitioner.
*Lloyd W. Creason, Esq.*, for the respondent.

OPINION.

BLACK: The first issue relates to the correct amount of depreciation which should be allowed petitioner as a deduction from 1936 income. There is no dispute as to the life of the property or the rate of depreciation which is to be used. The question at issue is the cost basis of the assets upon which depreciation is to be computed.

Petitioner contends that it is entitled to use the cost basis of the Dimension Co., adjusted by the amount of depreciation which had accrued to it at the time the property was transferred to petitioner. Respondent contends that the basis which should be used is $62,500, which represents the cost of the assets to petitioner. The statutes upon which petitioner relies are printed in the margin.[1]

Petitioner's contention is that there was a merger of the Dimension Co. with the old Morgan Co. and that immediately upon the com-

---

[1] Revenue Act of 1936—

SEC. 112. RECOGNITION OF GAIN OR LOSS.

\* \* \* \* \* \* \*

(g) DEFINITION OF REORGANIZATION.—As used in this section and section 113—

(1) The term "reorganization" means (A) a statutory merger or consolidation \* \* \*.

\* \* \* \* \* \* \*

SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property ; except that—

\* \* \* \* \* \* \*

(7) TRANSFERS TO CORPORATION.—If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. This paragraph shall not apply if the property acquired consists of stock or securities in a corporation a party to the reorganization,

pletion of the merger the new Morgan Co. owned all the assets of the Dimension Co. and the Morgan Co. and had assumed all of their liabilities and the stockholders of the two old companies had become stockholders in the new Morgan Co. In support of this contention, petitioner says in its brief:

So therefore on the effective date of the merger, namely, June 16, 1936, and immediately thereafter, that is to say until July 7, 1936, the former stockholders of the constituent Dimension Manufacturing Company were the owners of 829⅙ shares (or 82.9%) and the former stockholders of the constituent original Morgan Manufacturing Company were the owners of 171 (or 17.1%) of the outstanding capital stock of the consolidated corporation.

The difficulty with petitioner's contention in this respect, it seems to us, is that petitioner would treat as entirely separate transactions the formal merger agreement which is in evidence and an oral agreement between the stockholders of both corporations entered into prior

---

unless acquired by the issuance of stock or securities of the transferee as the consideration in whole or in part for the transfer.

\*     \*     \*     \*     \*     \*     \*

(b) ADJUSTED BASIS.—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a) \* \* \*.

\*     \*     \*     \*     \*     \*     \*

SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.

(a) BASIS FOR DEPRECIATION.—The basis upon which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 113 (b) for the purpose of determining the gain upon the sale or other disposition of such property.

\*     \*     \*     \*     \*     \*     \*

North Carolina statutes—

Sec. 1224 (a). *Merger, proceedings for.*—Any two or more corporations organized under the provisions of this chapter, or existing under the laws of this State, for the purpose of carrying on any kind of business, may consolidate into a single corporation which may be either one of said consolidated corporations or a new corporation to be formed by means of such consolidation; the directors, or a majority of them, of such corporations as desire to consolidate, may enter into an agreement signed by them and under the corporate seals of the respective corporations, prescribing the terms and conditions of consolidation, the mode of carrying the same into effect, and stating such other facts as are necessary to be set out in the certificate of incorporation, as provided in this chapter, as well as the manner and basis of converting the shares of each of the old corporations into stock of the new corporation, with such other details and provisions as are deemed necessary or desirable.

\* \* \* and the agreement so certified and acknowledged shall be filed in the office of the Secretary of State, and shall thence be taken and deemed to be the agreement and act of consolidation of the said corporation; \* \* \*

Sec. 1224 (b). *Merger, status of old and new corporations.*—When the agreement is signed, acknowledged, filed and recorded, as in the preceding section is required, the separate existence of the constituent corporations shall cease, and the consolidating corporations shall become a single corporation in accordance with the said agreement, possessing all the rights, privileges, powers and franchises, as well of a public as of a private nature and all and singular the rights, privileges, powers and franchises of each of said corporations, and all property, real, personal and mixed and all debts due on whatever account, and all other things in action or belonging to each of such corporations, shall be vested in the consolidated corporation; and all property, rights, privileges, powers and franchises, and all and every other interest shall be thereafter as effectually the property of the consolidated corporation as they were of the several and respective former corporations, and the title to any real estate, whether by deed or otherwise, under the laws of this State, vested in either of such corporations, shall not revert or be in any way impaired by reason of this article; \* \* \*

to June 15, 1936, and within the year 1936, by which it was agreed that:

> * * * if the Morgan Co. as it was to be constituted subsequent to June 16, 1936, should pay off the then existing notes payable of the Dimension Co. in the amount of $62,500, the stockholders of the Dimension Co. would release their rights if any in the Morgan Co. as constituted subsequent to June 16, 1936.

We do not think it is permissible to treat these two steps as separate transactions but that the transaction as a whole determines its legal consequences. See *Prairie Oil & Gas Co.* v. *Motter*, 66 Fed. (2d) 309.

When the whole transaction as disclosed by the stipulated facts is viewed, we think it shows an acquisition by the Morgan Co. of all the properties of the Dimension Co. in consideration of the payment in cash by the Morgan Co. of $62,500 indebtedness which Dimension Co. owed to its stockholders. This was a sale by one corporation of its assets to another corporation for a consideration of $62,500 in cash. Neither the Dimension Co. nor any of its stockholders ever received any stock of the Morgan Co. in consideration of the sale of the Dimension Co.'s assets. There was, therefore, not that continuing interest remaining in the old corporation or its stockholders which is required before there is a statutory reorganization. Cf. *Cortland Specialty Co.* v. *Commissioner*, 60 Fed. (2d) 937.

We, therefore, hold that petitioner did not acquire the assets in question in a statutory reorganization in which no gain or loss was recognized, but acquired them in a purchase for $62,500, and this latter amount represents the cost of such assets to petitioner and is the correct basis for depreciation. On this issue we sustain the Commissioner.

The second issue relates to petitioner's claim for a credit under section 26 (c) (1) of the Revenue Act of 1936, printed in the margin.[2] The respondent has determined that the petitioner was not under any written contract restricting the payment of dividends prior to May 1, 1936; that petitioner's contract with the Reconstruction Finance Corporation by its expressed terms did not become effective and binding upon the parties until the funds had been paid to or made available to the petitioner, which did not occur until on or about July 6, 1936.

---

[2] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

* * * * * *

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

(1) PROHIBITION ON PAYMENT OF DIVIDENDS.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. * * *

On the facts of record the respondent's determination in this respect must be sustained. See *Florence Cotton Mills*, 44 B. T. A. 436; *Bethlehem Silk Co.*, 43 B. T. A. 515.

Reviewed by the Board.

*Decision will be entered for respondent.*

LEECH dissents on the second point.

---

SMITH, dissenting: I can not agree with the conclusion reached in the majority opinion that there was not a reorganization of the Morgan Manufacturing Co. and the Dimension Manufacturing Co. A reorganization is defined by the statute (section 112 (g) (1) of the Revenue Act of 1936) as "(A) a statutory merger or consolidation." The majority opinion recognizes that there was a valid merger or consolidation of the corporations involved under the laws of the State of North Carolina, but takes the position, nevertheless, that this merger or consolidation was not a statutory reorganization; that, in effect, there was a sale by the Dimension Manufacturing Co. of all of its assets to the Morgan Manufacturing Co. for the amount of the indebtedness of the vendor company to its stockholders.

I do not think that this conclusion is justified. Obviously, the agreement of the Dimension Manufacturing Co.'s creditor stockholders to release their interest in the new corporation, if the merger should take place and if the indebtedness should be paid off by the new corporation, was not a part of the merger, or reorganization, plan. It was to take place, if at all, after the merger was completed. It was not a condition of the merger agreement. Neither the new corporation nor its stockholders were in any way bound ever to pay off the indebtedness. If they had failed to do so, could it still be said that there was no reorganization?

The North Carolina statutes provide a complete procedure for the merger or consolidation of corporations. See sec. 1224 (a) to (i). The statutes make no distinction between a merger and a consolidation, the terms being used interchangeably. *Carolina Coach Co.* v. *Hartness*, 198 N. C. 524; 152 S. E. 489. The merger or consolidation takes place "When the agreement [of merger or consolidation] is signed, acknowledged, filed and recorded," and thereupon the separate existence of the constituent corporations ceases and all of the assets and all of the debts and liabilities of the constituent corporations become the assets, debts, and liabilities of the new corporation. (Sec. 1224 (b).)

Speaking for the Supreme Court of North Carolina, Judge Adams said in *Carolina Coach Co.* v. *Hartness, supra:*

\* \* \* but the instant the agreement is signed, acknowledged, filed, and recorded the separate existence of the constituent corporations ceases and the

consolidating corporations become a single corporation in accordance with the agreement. Section 1224–b. When the separate existence of the constituent corporations comes to an end, the new corporation acquires not only the property, but the powers, privileges, and franchises of the old corporations, which thereafter have neither property nor franchise. It is provided that all interests of the old corporations shall thereafter be the property of the consolidated corporations as effectually as they had previously been the property of the constituent corporations. Section 1224–b.

If, then, the assets of the Dimension Manufacturing Co. became the assets of the petitioner (new corporation) by operation of law under the North Carolina statute, how can it be said that the petitioner purchased those assets from the Dimension Manufacturing Co. for the amount of that company's indebtedness to its stockholders? How, either, can it be said that the debt of the Dimension Manufacturing Co. to its stockholders did not, through the merger, become the debt of the petitioner?

It is my view, which I think is clearly supported by the facts and the law, that there was, first, a completed merger or consolidation of the Morgan Manufacturing Co. and the Dimension Manufacturing Co. under the laws of the State of North Carolina, and therefore a statutory reorganization; that the stockholders of both old corporations became stockholders of the new corporation and the assets and debts of the old corporation became the assets and debts of the new corporation; and that, subsequently, and as a separate transaction, the former creditor stockholders of the Dimension Manufacturing Co., who had become creditor stockholders of the new corporation, sold their interests in the stock of the new corporation in consideration for the payment by the new corporation of its indebtedness to them. I think that the former stockholders of the Dimension Manufacturing Co. continued as bona fide stockholders of the new corporation from the effective date of the merger or consolidation, June 16, 1936, to July 7, 1936, the date on which they sold or relinquished their right to the stock in the new corporation.

*Prairie Oil & Gas Co.* v. *Motter*, 66 Fed. (2d) 309, is strongly relied upon in the majority opinion. That case, however, involves a different factual situation and is not controlling in the instant case. Cf. also *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462; *West Texas Refining & Development Co.* v. *Commissioner*, 68 Fed. (2d) 77.

There being a reorganization, it follows that under the provisions of section 113 (a) (7) the basis of the assets in question for depreciation purposes is the same in the hands of the petitioner as it was in the hands of the Dimension Manufacturing Co. See *Fairbanks Court Wholesale Grocery Co.* v. *Commissioner*, 84 Fed. (2d) 18.